1  ROBERT W. BROWNLIE (Bar No. 138793)
   robert.brownlie@dlapiper.com
2  GERARD A. TRIPPITELLI (Bar No. 235788)
   jerry.trippitelli@dlapiper.com
3  RICHARD B. BULL (Bar No. 18755)
   richard.bull@dlapiper.com
4  **DLA PIPER LLP (US)**
   401 B Street, Suite 1700
5  San Diego, CA  92101-4297
   Tel:  619.699.2700
6  Fax:  619.699.2701

7  Attorneys for Defendants
   JOHN R. HART, RONALD LANGLEY, RONALD
8  G. DEUSTER, RICHARD D. RUPPERT, JULIE H.
   SULLIVAN, KRISTINA M. LESLIE, CARLOS C.
9  CAMPBELL, KENNETH J. SLEPICKA,
   and Nominal Defendant PICO HOLDINGS, INC.

10

11                      UNITED STATES DISTRICT COURT

12                    SOUTHERN DISTRICT OF CALIFORNIA

13

14

15  RONALD DENNIS, Derivatively on        CASE NO.  '11CV2271 WQHWVG
    Behalf of Himself and All Other Similarly
16  Situated,                             (San Diego Superior Court Case 37-2011-
                                              00096377-CU-SL-CTL)
17            Plaintiff,
                                          **NOTICE OF REMOVAL OF ACTION**
18       v.
                                          (Trial by Jury Demanded)
19  JOHN R. HART, RONALD LANGLEY,
    RONALD G. DEUSTER, RICHARD D.
20  RUPPERT, JULIE H. SULLIVAN,
    KRISTINA M. LESLIE, CARLOS C.
21  CAMPBELL, KENNETH J. SLEPICKA,

22            Defendants,

23       - and –

24  PICO HOLDINGS, INC.,

25            Nominal Defendant.

26

27

28

DLA PIPER LLP (US)   WEST\224754888.1                    -1-        Case No.
   SAN DIEGO
                                                                NOTICE OF REMOVAL OF ACTION

1   **TO THE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE**

2   **SOUTHERN DISTRICT OF CALIFORNIA, AND TO PLAINTIFF RONALD DENNIS,**

3   **AND HIS ATTORNEY OF RECORD LIONEL Z. GLANCY AND GLANCY BINKOW**

4   **GOLDBERG LLP:**

5     **PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. §§ 1441 and 1446, defendants

6   JOHN R. HART, RONALD LANGLEY, RONALD G. DEUSTER, RICHARD D. RUPPERT,

7   JULIE H. SULLIVAN, KRISTINA M. LESLIE, CARLOS C. CAMPBELL, KENNETH J.

8   SLEPICKA, and nominal defendant PICO HOLDINGS, INC. (collectively, the "Removing

9   Defendants") hereby remove the above-entitled action to the United States District Court for the

10  Southern District of California. In support of their Notice of Removal, the Removing Defendants

11  state the following:

12    1. On August 16, 2011, Plaintiff Ronald Dennis ("Plaintiff") filed the above-

13  captioned action in the Superior Court of the State of California in and for San Diego County,

14  Case No.37-2011-00096377. True and correct copies of the Complaint and the Summonses filed

15  are attached hereto as Exhibit A.

16    2. All Removing Defendants consent to this removal.

17    3. Plaintiff has not served the Complaint on any Defendants in this action. A

18  Defendant may remove an action before being served. *See Haseko Homes v. Underwriters Ins.*

19  *Co.*, No. 09cv1613-L (AJB), 2010 WL 358531 at *2 (S.D. Cal. Jan 22, 2010). Therefore, this

20  Notice of Removal is timely under 28 U.S.C. § 1446.

21    4. The Superior Court of the State of California in and for San Diego County is

22  located within the Southern District of California. Venue is therefore proper under 28 U.S.C. §

23  1441(a).

24    5. This is a civil action over which the District Courts of the United States have

25  original jurisdiction under 28 U.S.C. § 1331. The Complaint asserts express claims for breach of

26  fiduciary duties, gross mismanagement, abuse of control, waste of corporate assets, and unjust

27  enrichment based on "PICO Board's decision to increase CEO and top executive pay in 2010,

28  despite the Company's severely impaired financial results . . . ." (Compl. ¶ 8.) The Complaint

DLA PIPER LLP (US)
SAN DIEGO

WEST\224754888.1  -2-  Case No.

1   further states that Defendant PICO Holdings ("PICO") and certain of its officers failed to adhere

2   to the Company's pay-for-performance policies, and that their Proxy statements made material

3   misrepresentations concerning this failure. (*See* Compl. ¶¶ 22, 30, 33, 40.)

4          6.    Federal question jurisdiction confers the District Courts of the United States

5   jurisdiction on any action that "arises under" federal law for purposes of 28 U.S.C. §1331. A

6   claim "arises under" federal law when "a state law claim necessarily raise[s] a stated federal

7   issue, actually disputed and substantial, which a federal forum may entertain without disturbing

8   any congressionally approved balance of federal and state judicial responsibilities." *Grable &*

9   *Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 125 S. Ct. 2363, 2368 (2005).

10  Similarly, where the adjudication of a state cause of action necessarily involves the resolution of a

11  substantive federal issue, removal is proper. *Rains v. Criterion Sys.*, 80 F.2d 339, 345 (9th Cir.

12  1996).

13         7.    Federal jurisdiction may not be avoided "by omitting from the complaint federal

14  law essential to his or her claim or by casting in state law terms a claim that can be made only

15  under federal law." *Sparta v. Surgical Corp. v. National Ass'n of Securities Dealers*, 159 F.3d

16  1209, 1212 (9th Cir. 1998). While Plaintiff avoids specifically citing to Section 14(a) and SEC

17  Rule 14a-9 regarding false and misleading proxy statements, the claims alleged are directly

18  governed by federal securities law. The Complaint provides that the 2010 executive

19  compensation was false and misleading "because the 2010 Proxy Statement omitted to disclose

20  that PICO's 2010 CEO and top executive pay hikes violated PICO's pay for performance policy."

21  (Compl. ¶ 30.) Further, the Complaint states that the Defendants breached their duties by

22  "concealing that the 2010 executive compensation violated the executive compensation policy."

23  (Compl. ¶ 65.) Because Plaintiff seeks the Court's determination on whether Defendants

24  misrepresented their pay-for-performance policy and issued false and misleading proxy

25  statements, jurisdiction rests exclusively within the United States District Courts.

26         8.    Moreover, while strategically omitted from the Complaint, Plaintiff's state law

27  allegations rely on PICO's duties arising under the Dodd-Frank Wall Street Reform and

28  Consumer Protection Act, 15 U.S.C. § 78n-1, which require companies to hold periodically

1   nonbinding shareholder votes to approve executive compensation (known as a "Say on Pay"

2   vote). It is the federal "Say on Pay" legislation that gives rise to the Company's complained

3   duties, particularly the Company's obligation to conduct the "Say on Pay" advisory shareholder

4   vote. (*See* Compl. ¶¶39-40.) Any relief conceivably afforded to the Plaintiff would be premised

5   upon an interpretation of the federal "Say on Pay" legislation.

6          9.     Case law supports removal under these circumstances. In *Sparta, supra*, 159 F.3d

7   at 1211-1212, the court held that a breach of contract claim came within the jurisdiction of the

8   federal courts when premised under the Securities Exchange Act of 1934. The Ninth Circuit

9   found that state law claims predicated on specific violations of federal securities law are

10   committed to federal jurisdiction. *Id.* Other cases concerning interpretation of the federal "Say

11   on Pay" law and misrepresentations in proxy statements have similarly been removed to federal

12   court. *See In re KeyCorp Derivative Litigation*, Case No. 1:10-cv-01786-DAP (N.D. Ohio Aug.

13   12, 2010).

14         10.    Removal is further proper where the "right to relief necessarily depends on

15   resolution of a substantial question of federal law." *Franchise Tax Bd. v. Constr. Laborers*

16   *Vacation Trust*, 463 U.S. 1, 28 (1983). Because the Complaint states that the Defendants

17   breached their duties by recommending that the shareholders approve PICO's 2010 executive

18   compensation pursuant to the Advisory (Non-Binding) Vote on Executive Compensation (Say on

19   Pay), the Plaintiff's right to relief necessarily depends on whether federal law requires a Company

20   to strictly adhere to the advisory "Say on Pay" vote or breach its fiduciary duties to the Company.

21   (Compl. ¶ 39-44.)

22         11.    Plaintiff's claims invoke the construction of federal law and pose substantial

23   federal questions, thus they necessarily arise under federal law. This Court has jurisdiction over

24   the claims under 28 U.S.C. § 1331.

25         12.    Pursuant to 28 U.S.C. § 1446(d), Removing Defendants have provided notice of

26   this Notice of Removal to the Superior Court of the State of California in and for San Diego

27   County.

28         13.    This Notice of Removal has been served upon Plaintiff and all parties pursuant to

1    28 U.S.C. § 1446(d).

2        14.    By removing the Action to this Court, Removing Defendants do not waive any

3    defenses, objections or motions available to them under state and federal law.

4        15.    WHEREFORE, pursuant to 28 U.S.C. §§ 1441, 1446 and 1331, Removing

5    Defendants hereby remove the above-captioned action from the Superior Court of the State of

6    California in and for San Diego County to the United States District Court for the Southern

7    District of California.

8

Dated:  September 30, 2011.

9
                                        DLA PIPER LLP (US)
10

11

12                                      By:  s/Robert W. Brownlie
                                            ROBERT W. BROWNLIE
13                                          GERARD A. TRIPPITELLI
                                            RICHARD B. BULL
14                                          Attorneys for Defendants
                                            JOHN R. HART, RONALD LANGLEY,
15                                          RONALD G. DEUSTER, RICHARD D.
                                            RUPPERT, JULIE H. SULLIVAN,
16                                          KRISTINA M. LESLIE, CARLOS C.
                                            CAMPBELL, KENNETH J. SLEPICKA,
17                                          And Nominal Defendant
                                            PICO HOLDINGS, INC.

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

## TABLE OF CONTENTS

### EXHIBITS

| Exhibit | Description | |
|---------|-------------|---|
| A | State Court Summons and Complaint | Pages 6 to 39 |

SUM-100

FILED
CIVIL BUSINESS OFFICE 9
CENTRAL DIVISION

2011 AUG 16 A 11:31

CLERK-SUPERIOR COURT
SAN DIEGO COUNTY, CA

**SUMMONS**
**(CITACION JUDICIAL)**

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
**(AVISO AL DEMANDADO):**

JOHN R. HART [See Additional Parties Attachments for Additional Defendants]

**YOU ARE BEING SUED BY PLAINTIFF:**
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):**

RONALD DENNIS, Individually and On Behalf of All Others Similarly Situated

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| | |
|---|---|
| The name and address of the court is:<br>(El nombre y dirección de la corte es): San Diego Superior Court<br>Hall of Justice Courthouse - 330 West Broadway, San Diego, CA 92101 | CASE NUMBER:<br>(Número del Caso):<br>37-2011-00096377-CU-BL-CTL |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección, y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):

Louis N. Boyarsky, 1801 Avenue of the Stars, Suite 311, Los Angeles, CA 90067, Tel. (310) 201-9150

DATE: AUG 16 2011
(Fecha)

Clerk, by _____, Deputy
(Secretario)          (Adjunto)

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):

3. ☐ on behalf of (specify):

   under: ☐ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)

   ☐ other (specify):

4. ☐ by personal delivery on (date):

Page 1 of 1

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

**SUMMONS**

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

Exhibit A, Page 6

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Ronald Dennis v. John R. Hart, et al. | |

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties (Check only one box. Use a separate page for each type of party.):

☐ Plaintiff   ☑ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

RONALD LANGLEY, RONALD G. DEUSTER, RICHARD D. RUPPERT, JULIE H. SULLIVAN, KRISTINA M. LESLIE, CARLOS C. CAMPBELL AND KENNETH J. SLEPICKA and PICO HOLDINGS, INC. as Nominal Defendant.

Page _____ of _____

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

## ADDITIONAL PARTIES ATTACHMENT
Attachment to Summons

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

STREET ADDRESS:    330 West Broadway

MAILING ADDRESS:  330 West Broadway

CITY AND ZIP CODE:  San Diego, CA 92101

BRANCH NAME:  Central

TELEPHONE NUMBER: (619) 450-7082

PLAINTIFF(S) / PETITIONER(S):   RONALD DENNIS

DEFENDANT(S) / RESPONDENT(S):  JOHN R HART et.al.

DENNIS VS. HART

| NOTICE OF CASE ASSIGNMENT | CASE NUMBER:<br>37-2011-00096377-CU-SL-CTL |
|---|---|

Judge:  Ronald L. Styn              Department: C-62

**COMPLAINT/PETITION FILED:** 08/16/2011

### CASES ASSIGNED TO THE PROBATE DIVISION ARE NOT REQUIRED TO COMPLY WITH THE CIVIL REQUIREMENTS LISTED BELOW

IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT), THE ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION FORM (SDSC FORM #CIV-730), A STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR) (SDSC FORM #CIV-359), AND OTHER DOCUMENTS AS SET OUT IN SDSC LOCAL RULE 2.1.5.

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED.

TIME STANDARDS:  The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time.  General civil cases consist of all civil cases except:  small claims proceedings, civil petitions, unlawful detainer proceedings, probate, guardianship, conservatorship, juvenile, and family law proceedings.

COMPLAINTS:  Complaints and all other documents listed in SDSC Local Rule 2.1.5 must be served on all named defendants, and a Certificate of Service (SDSC form #CIV-345) filed within 60 days of filing.

DEFENDANT'S APPEARANCE:  Defendant must generally appear within 30 days of service of the complaint.  (Plaintiff may stipulate to no more than 15 day extension which must be in writing and filed with the Court.)  (SDSC Local Rule 2.1.6)

DEFAULT:  If the defendant has not generally appeared and no extension has been granted, the plaintiff must request default within 45 days of the filing of the Certificate of Service.  (SDSC Local Rule 2.1.7)

CASE MANAGEMENT CONFERENCE:  A Case Management Conference will be set within 150 days of filing the complaint.

ALTERNATIVE DISPUTE RESOLUTION (ADR):  THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO TRIAL, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE.  PARTIES MAY FILE THE ATTACHED STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (SDSC FORM #CIV-359).

YOU MAY ALSO BE ORDERED TO PARTICIPATE IN ARBITRATION.  IF THE CASE IS ORDERED TO ARBITRATION PURSUANT TO CODE CIV. PROC. 1411.11, THE COSTS OF ARBITRATION WILL BE PAID BY THE COURT PURSUANT TO CODE CIV. PROC. 1141.28.

FOR MORE INFORMATION, SEE THE ATTACHED ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION FORM (SDSC FORM #CIV-730)

Exhibit A, Page 8

FILED
CIVIL BUSINESS OFFICE 9
CENTRAL DIVISION

2011 AUG 16  A 11: 32

CLERK SUPERIOR COURT
SAN DIEGO COUNTY, CA.

1  LIONEL Z. GLANCY (#134180)
   MICHAEL GOLDBERG (#188669)
2  LOUIS N. BOYARSKY (#263379)
   **GLANCY BINKOW GOLDBERG LLP**
3  1801 Avenue of the Stars, Suite 311
   Los Angeles, California 90067
4  Telephone: (310) 201-9150
   Facsimile: (310) 201-9160
5  info@glancylaw.com

6  *Attorneys for Plaintiff*

7

8                    SUPERIOR COURT OF CALIFORNIA

9                        COUNTY OF SAN DIEGO

10 RONALD DENNIS, Derivatively on     Case No. _____ 37-2011-00096377-CU-SL-CTL
   Behalf of Himself and All Others Similarly
11 Situated,

12                                     **VERIFIED SHAREHOLDER**
                Plaintiff,            **DERIVATIVE COMPLAINT FOR**
13                                     **BREACH OF FIDUCIARTY DUTY OF**
        vs.                           **LOYALTY, CANDOR AND GOOD**
14                                     **FAITH, AND UNJUST ENRICHMENT**
   JOHN R. HART, RONALD LANGLEY,
15 RONALD G. DEUSTER, RICHARD D.
   RUPPERT, JULIE H. SULLIVAN,        **DEMAND FOR JURY TRIAL**
16 KRISTINA M. LESLIE, CARLOS C.
   CAMPBELL AND KENNETH J.
17 SLEPICKA
                Defendants,
18
19 -and-
20
   PICO HOLDINGS, INC.,
21
                Nominal Defendant.
22

23

24

25

26

27

28

                    SHAREHOLDER DERIVATIVE COMPLAINT

## INTRODUCTION

1.     Plaintiff, by and through his attorneys, brings this action derivatively on behalf of nominal defendant PICO Holdings, Inc. ("PICO" or the "Company") and alleges upon personal knowledge as to himself and his own acts, and as to all other matters based upon the investigation conducted by his attorneys which included, among other things, a review of Securities and Exchange Commission ("SEC") filings, documents, analyst reports, news reports, press releases, and other publicly available information regarding the Company, as follows:

2.     This is a shareholder derivative action brought on behalf of the Company.  The complaint seeks relief against the entire PICO Board of Directors – defendants John R. Hart (PICO's President and Chief Executive Officer ("CEO")), Ronald Langley, Ronald G. Duester, Richard D. Ruppert, Julie H. Sullivan, Kristina M. Leslie, Carlos C. Campbell, and Kenneth J. Slecika (together, "PICO Board") to their breaches of fiduciary duties and other violations of the law.

3.     This action arises from defendants' profligate spending on stockholder funds on executive compensation – particularly the recent authorization by the Board of pay hikes for PICO's top-ranking officers in 2010.  In a word, PICO's performance in 2010 was "abysmal."  Given this, the decision to increase PICO's 2010 executive compensation was unreasonable, disloyal, not made in good faith, and additionally violated PICO's pay-for-performance executive compensation policy.  Thus, it was not a legitimate exercise of business judgment.

4.     Historically, defendants have represented publicly that the Company's executive compensation practices are firmly rooted in a "pay-for-performance" philosophy.  For example, in PICO's most recent Proxy Statement, the Board represented that it had developed a compensation program designed not only to retain quality executives but also to incentivize and award performance.

5.     For 2010, PICO reported net income of *negative $11.17 million*, the Company's return on equity was *negative 1.94%*, and free cash flows per share of PICO stock dropped

SHAREHOLDER DERIVATIVE COMPLAINT
- 1 -

1   dramatically from *negative $1.36* at the end of 2009 to *negative $2.93* at the end of 2010.

2   PICO's declining 2010 performance is set forth graphically below:

### Diluted EPS From Continuing Ops



### Free Cash Flow per Share



### Cash Flow Growth



- 2 -

6.     Nevertheless, the Board increased executive compensation in 2010. The board raised 2010 executive compensation which included a *487%* increase in total compensation for PICO's CEO. Despite PICO's sagging 2010 stock price performance and a negative annual shareholder return PICO's Board approved the 2010 pay hike and unanimously recommended approval to the Company's shareholders.

7.     On May 13, 2011, a majority of voting PICO shareholders *(61%)* rejected the Company's excessive 2010 CEO and top executive compensation.[1] Despite the adverse shareholder vote, PICO's directors have not rescinded the 2010 executive compensation or have they indicated their intention to do so.

8.     PICO Board's decision to increase CEO and top executive pay in 2010, despite the Company's severely impaired financial results, was disloyal, irrational and unreasonable, and not the product of a valid exercise of business judgment. Instead, PICO's Board's pay hikes violated its own pay-for-performance policy and, as intended, favored the interest of PICO's CEO and top executives at the expense of the corporation and its shareholders. PICO Board's unanimous recommendation that PICO shareholders approve the 2010 executive compensation was also materially false and misleading when made. This is because PICO's Board failed to disclose that the 2010 raises for PICO's CEO and top executives were excessively large and irrational based on PICO's poor 2010 shareholder returns.

9.     The PICO Board is not entitled to business judgment protection for the 2010 pay hikes and/or the false and misleading unanimous recommendation for shareholder approval of the 2010 executive compensation. PICO shareholders concluded, in their independent business judgment, that the PICO Board's 2010 CEO and top executive pay hikes were not in the best interest of PICO and its shareholders. The PICO Board must now demonstrate that the 2010

---

[1] On average nearly three quarters of Company's holding shareholder votes in 2011 have passed Say on Pay Votes with *over 90% shareholder* approval.  See Semler Brossy Consulting Group, LLC 2011 Say on   Pay Results: Russell 3000 June 2, 2011 http://www.semlerbrossy.com/pages/htindex.php

SHAREHOLDER DERIVATIVE COMPLAINT
- 3 -

Exhibit A, Page 12

1    executive pay hikes were not a breach of fiduciary duty of loyalty (and candor and good faith).
2    This is unlikely, however, because increasing executive pay during a period of negative
3    shareholder returns is not rewarding PICO's CEO and top executive for superior performance,
4    but rather rewarding PICO's executives for underperformance.

5        10.    PICO has been damaged by the PICO Board's failure to publicly rescind the
6    2010 pay hikes to PICO's CEO and top officers.  By this action, plaintiff seeks relief for PICO
7    as a result of the PICO Board's disloyalty, its CEO and top executives' unjust enrichment.

8                                **JURISDICTION AND VENUE**

9        11.    This Court has jurisdiction over Defendants pursuant to California Constitution,
10   Article VI § 10, California Corporations Code § 800 and because Defendants conduct business
11   in California, including, but not limited to, the conduct here at issue, or because they have
12   sufficient minimum contacts with California to render the exercise of jurisdiction by the
13   California courts permissible under traditional notions of fair play and substantial justice.  This
14   action is not removable. Venue is proper in this Court because the conduct at issue took place
15   and has effect in this County.  PICO's headquarters and principal place of business at 875
16   Prospect Street, Suite 301, La Jolla, California 92037.  PICO's State of Incorporation is
17   California.

18       12.    The amount in controversy, exclusive of interest and cost, exceeds the
19   jurisdictional minimum of this Court.

20                                       **THE PARTIES**

21       13.    Plaintiff Ronald Dennis ("plaintiff") is a current shareholder of PICO and has
22   been a shareholder of the Company during the Relevant Period.

23       14.    Nominal defendant PICO is a California corporation with its executive offices
24   located at 875 Prospect Street, Suite 301, La Jolla, California 92037.  According to its public
25   filings PICO is a diversified holding company that seeks to build and operate businesses where
26   significant value can be created from the development of unique assets.
27
28

                        SHAREHOLDER DERIVATIVE COMPLAINT
                                        - 4 -

15.    Defendant John R. Hart ("Hart") is the CEO, President and a director of PICO. Despite PICO's poor stock price performance and a negative annual shareholder return for 2010, Defendant Hart's total compensation increased 487% to $14,278,401. Defendant Hart has been unjustly enriched.  Defendant Hart also falsely represented to PICO shareholders in PICO's 2011 Proxy Statement, dated April 4, 2011 that PICO followed a pay-for-performance executive compensation policy in 2010 when, in fact, it did not.

16.    Defendant Ronald Langley ("Langley") is the Chairman of PICO's Board of Directors. Despite PICO's poor stock price performance and a negative annual shareholder return for 2010, Defendant Langley approved hikes in pay for PICO's CEO and top executives in 2010. Not only were the hikes irrational and unreasonable under the circumstances, they also violated the PICO Board's own pay-for-performance executive compensation policy. Although the PICO Board that stated that their compensation philosophy "centers around the principle of aligning pay and performance," in a year where PICO posted a negative annual shareholder return, granting pay hikes to PICO's CEO and top executives was not rewarding superior performance, but rather favoring PICO's CEO and top executives at the expense of the Company.  Defendant Langley also falsely represented to PICO's shareholders in the 2011 Proxy Statement that PICO followed a pay-for-performance executive compensation policy in 2010 when, in fact, it did not.

17.    Defendant Ronald G. Duester ("Duester") has been a PICO director since February 28, 2011.  Defendant Deuster sits on the audit and compensation committees of the Board. Despite PICO's poor stock price performance and a negative annual shareholder return for 2010, Defendant Deuster approved hikes in pay for PICO's CEO and top executives in 2010. Not only were the hikes irrational and unreasonable under the circumstances, they also violated the PICO Board's own pay-for-performance executive compensation policy. Although the PICO Board stated that their compensation philosophy "centers around the principle of aligning pay and performance," in a year where PICO posted a negative annual shareholder

SHAREHOLDER DERIVATIVE COMPLAINT
-5-

1   return, granting pay hikes to PICO's CEO and top executives was not rewarding superior

2   performance, but rather favoring PICO's CEO and top executives at the expense of the

3   Company.  Defendant Deuster also falsely represented to PICO's shareholders in the 2011

4   Proxy Statement that PICO followed a pay-for-performance executive compensation policy in

5   2010 when, in fact, it did not.

6       18.    Defendant Richard D. Ruppert ("Ruppert") has been a PICO director since 1996.

7   Defendant Ruppert sits on the audit and compensation committees of the Board.  Despite

8   PICO's poor stock price performance and a negative annual shareholder return for 2010,

9   Defendant Ruppert approved hikes in pay for PICO's CEO and top executives in 2010.  Not

10   only were the hikes irrational and unreasonable under the circumstances, they also violated the

11   PICO Board's own pay-for-performance executive compensation policy.  Although the PICO

12   Board stated that their compensation philosophy "centers around the principle of aligning pay

13   and performance," in a year where PICO posted a negative annual shareholder return, granting

14   pay hikes to PICO's CEO and top executives was not rewarding superior performance, but

15   rather favoring PICO's CEO and top executives at the expense of the Company.  Defendant

16   Ruppert also falsely represented to PICO's shareholders in the 2011 Proxy Statement that PICO

17   followed a pay-for-performance executive compensation policy in 2010 when, in fact, it did not.

18       19.    Defendant Julie H. Sullivan ("Sullivan") has been a PICO director since 2009.

19   Defendant Sullivan sits on the audit and governance and nominating committees of the Board.

20   Despite PICO's poor stock price performance and a negative annual shareholder return for

21   2010, Defendant Sullivan approved hikes in pay for PICO's CEO and top executives in 2010.

22   Not only were the hikes irrational and unreasonable under the circumstances, they also violated

23   the PICO Board's own pay-for-performance executive compensation policy.  Although the

24   PICO board that stated that their compensation philosophy "centers around the principle of

25   aligning pay and performance," in a year where PICO posted a negative annual shareholder

26   return, granting pay hikes to PICO's CEO and top executives was not rewarding superior

27

28

SHAREHOLDER DERIVATIVE COMPLAINT
- 6 -

1  performance, but rather favoring PICO's CEO and top executives at the expense of the

2  Company.  Defendant Sullivan also falsely represented to PICO's shareholders in the 2011

3  Proxy Statement that PICO followed a pay-for-performance executive compensation policy in

4  2010 when, in fact, it did not.

5       20.    Defendant Kristina M. Leslie ("Leslie") has been a PICO director since 2009.

6  Defendant Leslie sits on the audit and compensation committees of the Board.  Despite PICO's

7  poor stock price performance and a negative annual shareholder return for 2010, Defendant

8  Leslie approved hikes in pay for PICO's CEO and top executives in 2010.  Not only were the

9  hikes irrational and unreasonable under the circumstances, they also violated the PICO Board's

10  own pay-for-performance executive compensation policy.  Although the PICO Board stated that

11  their compensation philosophy "centers around the principle of aligning pay and performance,"

12  in a year where PICO posted a negative annual shareholder return, granting pay hikes to PICO's

13  CEO and top executives was not rewarding superior performance, but rather favoring PICO's

14  CEO and top executives at the expense of the Company.  Defendant Leslie also falsely

15  represented to PICO's shareholders in the 2001 Proxy Statement that PICO followed a pay-for-

16

17  performance executive compensation policy in 2010 when, in fact, it did not.

18       21.    Defendant Carlos C. Campbell ("Campbell") has been a PICO director since

19  1998.  Defendant Campbell sits on the audit, compensation, and governance and nominating

20  committees of the Board.  Despite PICO's poor stock price performance and a negative annual

21  shareholder return for 2010, Defendant Campbell approved hikes in pay for PICO's CEO and

22  top executives in 2010.  Not only were the hikes irrational and unreasonable under the

23  circumstances, they also violated the PICO Board's own pay-for-performance executive

24  compensation policy.  Although the PICO Board stated that their compensation philosophy

25  "centers around the principle of aligning pay and performance," in a year where PICO posted a

26  negative annual shareholder return, granting pay hikes to PICO's CEO and top executives was

27  not rewarding superior performance, but rather favoring PICO's CEO and top executives at the

28

SHAREHOLDER DERIVATIVE COMPLAINT
- 7 -

1   expense of the Company. Defendant Campbell also falsely represented to PICO's shareholders
2   in the 2011 Proxy Statement that PICO followed a pay-for-performance executive
3   compensation policy in 2010 when, in fact, it did not.

4        22.   Defendant Kenneth J. Slepcika ("Slepcika") has been a PICO director since
5   2005. Defendant Slepcika sits on the governance and nominating committee of the Board.
6   Despite PICO's poor stock price performance and a negative annual shareholder return for
7   2010, Defendant Slepcika approved hikes in pay for PICO's CEO and top executives in 2010.
8   Not only were the hikes irrational and unreasonable under the circumstances, they also violated
9   the PICO Board's own pay-for-performance executive compensation policy. Although the
10  PICO Board stated that their compensation philosophy "centers around the principle of aligning
11  pay and performance," in a year where PICO posted a negative annual shareholder return,
12  granting pay hikes to PICO's CEO and top executives was not rewarding superior performance,
13  but rather favoring PICO's CEO and top executives at the expense of the Company. Defendant
14  Slepcika also falsely represented to PICO's shareholders in the 2011 Proxy Statement that PICO
15  followed a pay-for-performance executive compensation policy in 2010 when, in fact, it did not.

16

17                  **DUTIES OF THE INDIVIDUAL DEFENDANTS**

18       23.   By reason of their positions as officers and directors of the Company, and
19  because of their ability to control the business and corporate affairs of the Company, the
20  Individual Defendants owed the Company and its shareholders the fiduciary obligations of good
21  faith, trust, loyalty, and due care, and were, and are, required to use their utmost ability to
22  control and manage the Company in a fair, just, honest, and equitable manner. The Individual
23  Defendants were, and are, required to act in furtherance of the best interests of the Company
24  and its shareholders so as to benefit all shareholders equally and not in furtherance of their
25  personal interest or benefit.

26       24.   Each director and officer of the Company owes to PICO and its shareholders the
27  fiduciary duty to exercise good faith and diligence in the administration of the affairs of the

28

SHAREHOLDER DERIVATIVE COMPLAINT
- 8 -

1  Company and in the use and preservation of its property and assets, and the highest obligations

2  of fair dealing. In addition, as officers and directors of a publicly held company, the Individual

3  Defendants had a duty to promptly disseminate accurate and truthful information with regard to

4  the Company's revenue, margins, operations, performance, management, projections and

5  forecasts so that the market price of the Company's stock would be based on truthful and

6  accurate information.

7    25.   The Individual Defendants, because of their positions of control and authority as

8  directors and/or officers of PICO, were able to and did, directly and/or indirectly, exercise

9  control over the wrongful acts complained of herein, as well as the contents of the various

10  public statements issued by the Company. Because of their executive, managerial and

11  directorial positions with PICO, each of the Individual Defendants had access to adverse, non-

12  public information about the financial condition, operations, and misrepresentations made.

13    26.   At all times relevant hereto, each of the Individual Defendants was the agent of

14  the other Individual Defendants and of PICO, and was at all times acting within the course and

15  scope of such agency.

16

17    27.   To discharge their duties, the officers and directors of PICO were required to

18  exercise reasonable and prudent supervision over the management, policies, practices and

19  controls of the financial affairs of the Company. By virtue of such duties, the officers and

20  directors of PICO were required to, among other things:

21        a.   manage, conduct, supervise and direct the business affairs of PICO in

22  accordance with all applicable laws;

23        b.   neither violate nor knowingly permit any officer, director or employee of

24  PICO to violate applicable laws, rules and regulations;

25        c.   establish and maintain systematic and accurate records and reports of the

26  business and affairs of PICO and procedures for the reporting of the business and affairs to the

27

28

SHAREHOLDER DERIVATIVE COMPLAINT
- 9 -

Board and to periodically investigate, or cause independent investigation to be made of, said reports and records;

        d.      neither engage in self-dealing nor knowingly permit any officer, director or employee of PICO to engage in self-dealing;

        e.      ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the investing public;

        f.      conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

        g.      properly and accurately guide investors and analysts regarding the true financial condition of the Company at any given time, including making accurate statements about the Company's financial results and prospects, and ensuring that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times; and

        h.      remain informed regarding how PICO conducted its operations, and, upon receipt of notice or information of imprudent or sound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices and make such disclosures as necessary to comply with applicable laws.

        28.      Each Individual Defendant, by virtue of his or her position as a director and officer, owed to the Company and its shareholders the fiduciary duties of loyalty, good faith, the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants alleged herein involves a violation of their obligations as directors and officers of PICO, the absence of good faith on their part and a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have

SHAREHOLDER DERIVATIVE COMPLAINT
- 10 -

been aware posed a risk of serious injury to the Company. The conduct of the Individual Defendants, who were also officers and/or directors of the Company, has been ratified by the remaining Director Defendants who collectively comprised all of PICO's Board during the Relevant Period.

29.    Because of their executive positions and/or access to PICO's internal information, defendants knew or should have known that increasing 2010 CEO and top executive pay despite the Company's negative 2010 annual shareholder return was unreasonably excessive and violated the PICO Board's own pay-for performance executive compensation philosophy. And, as the overwhelming rejection of PICO's Board's 2010 CEO and top executive pay hikes by PICO's shareholders strongly evidences, the 2010 pay hikes are not in the best interest of PICO and/or its shareholders. The 2010 pay hikes were irrational and unreasonable and not the produce of a valid exercise of business judgment and, as intended by the PICO Board, served the interest of PICO's CEO and top executives at the expense of the Company and its shareholders.

30.    Defendants also knew or should have known that the PICO Board's unanimous recommendation to PICO shareholders to approve the 2010 executive compensation was false and misleading when made. This is because the 2010 Proxy Statement omitted to disclose that PICO's 2010 CEO and top executive pay hikes violated PICO's pay for performance policy, were excessive under the circumstances, and were not the product of a valid exercise of business judgment.

## AIDING AND ABETTING AND CONCERTED ACTION

31.    In committing the wrongful acts particularized herein, defendants have pursued or joined in the pursuit of a common course of conduct, and have acted in concert with one another in furtherance of their common plan or design. In addition to the wrongful conduct particularized herein as giving rise to primary liability, defendants further aided and abetted and/or assisted each other in breach of their respective duties.

SHAREHOLDER DERIVATIVE COMPLAINT
- 11 -

32.   Each of the defendants aided and abetted and rendered substantial assistance in the wrongs detailed herein.  In taking such actions to substantially assist the commission of the wrongdoing detailed herein, each defendant acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his, her, or its overall contribution to and furtherance of the wrongdoing.

## FACTUAL ALLEGATIONS

33.   Historically, the PICO Board has represented to PICO shareholders that the Company's executive compensation practices are firmly rooted in a pay-for-performance philosophy.  For instance, in PICO's 2011 Proxy Statement the PICO Board represented that it had developed a compensation program designed not only to retain quality executive officers but also to reward performance.  The 2011 Proxy Statement provides states:

> Our executive compensation program is designed to retain our executive officers and, when warranted, reward them for achieving *superior growth* in book value per share with moderate risk.
>
> *       *       *
>
> Incentive compensation is a key component of our executive compensation program, which allows our executive officers to earn above-average compensation if they achieve superior growth in book value per share.  We tie these awards to a benchmark of the five-year average of the Standard & Poor's 500 index in order to emphasize long-term performance

34.   Over the past several years, especially in 2010, there has been little if any meaningful relationship between PICO's executive pay and corporate performance.  PICO's annual revenue declined from $60.35 million in 2008 to $32.17 million in 2010.  Furthermore, PICO's share price declined from a high of $47.64 in 2008 to recently trading at as low as $27.39.

35.   In 2010, the most important financial metrics to PICO shareholders —stock price performance and annual shareholder return—declined.   Specifically, while under the stewardship of PICO's CEO and top executives, the Company's stock performance languished behind the stock performance of its industry peers and its annual shareholder return was

SHAREHOLDER DERIVATIVE COMPLAINT
- 12 -

negative in 2010.  The Company's performance in comparison with its peer group is set forth graphically below:



36.     The decline in PICO's stock performance and annual shareholder return from 2009 to 2010 is set forth graphically below:



37.     Defendants were not mere spectators to PICO's 2010 financial decline.  On the contrary, defendants were at all relevant times responsible for the management and oversight of

SHAREHOLDER DERIVATIVE COMPLAINT
- 13 -

1   PICO's business and affairs.   Throughout 2010, PICO's officers and directors regularly and

2   directly communicated with each other about PICO's financial performance and made decisions

3   that directly and indirectly impacted the Company's 2010 financial results.   As a result, the

4   PICO Board was a percipient witness to not only PICOs 2010 financial decline but also to the

5   significant underperformance of PICO's CEO and top executives.

6       38.   Notwithstanding PICO's 2010 results, PICO's executive compensation for the

7   period dramatically increased.   For example, PICO's CEO's total compensation jumped *487%*

8   to $14,278,401 in 2010.   The PICO Board approved this excessive pay hike which is graphically

9   set forth below:

## President & CEO Compensation



20       39.   The Board had "recommended" to PICO shareholders that they should approve

21   PICO's 2010 executive compensation, stating:

23      **Proposal NO. 2: Advisory (Non-Bidning) Vote On Executive Compensation (Say-On-Pay)**

25      The recently enacted Dodd-Frank Wall Street Reform and Consumer Protection Act, or the Dodd-Frank Act, requires that our stockholders have the opportunity to cast an advisory (non-binding) vote on executive compensation, commonly referred to as a "Say-on-Pay" vote, commencing with our 2011 annual meeting, as well as an advisory vote with respect to whether future Say-on-Pay votes will be held every one, two or three years, which is the subject of Proposal No. 3 in this proxy statement.

SHAREHOLDER DERIVATIVE COMPLAINT
- 14 -

The advisory vote on executive compensation is a non-binding vote on the compensation of our "named executive officers," as identified in the Compensation Discussion and Analysis, or CD&A section, the tabular disclosure regarding such compensation, and the accompanying narrative disclosure, set forth in this proxy statement. Please read the CD&A section of this proxy statement for a detailed discussion about our executive compensation programs, including information about the fiscal 2010 compensation of our named executive officers.

The advisory vote on executive compensation is not a vote on our general compensation policies, the compensation of our board of directors, or our compensation policies and practices as they relate to risk management. The Dodd-Frank Act requires that we hold the advisory vote on executive compensation at least once every three years.

Our compensation philosophy centers around the principle of aligning pay and performance. The primary objectives of our compensation program are to pay for performance, recruit, retain and motivate the highest quality executive officers who are critical to our success, align the interests of our named executive officers and other employees with those of our shareholders and promote excellent corporate governance. The CD&A section of this proxy statement provides a more detailed discussion of our executive compensation program and compensation philosophy.

We have many compensation practices that ensure consistent leadership, decision-making and actions, without taking unnecessary risks. The practices are discussed in detail in the CD&A and include:

- We adhere to the highest ethical standards in our corporate governance practice, such as our long-standing insider trading policy.
- We do not provide tax reimbursements or gross-ups in connection with any of the components of our executive compensation.
- All of our employees are employed on an at-will basis, other than our CEO who is the only employee with an employment agreement.
- We do not provide our named executive officers with any perquisites or other benefits that are not available to all employees.
- Our overall compensation programs include a mix of different components for the short-term (base salary) and the long-term (bonuses based on growth in book value per share and stock-based awards).

SHAREHOLDER DERIVATIVE COMPLAINT
- 15 -

The vote solicited by this Proposal No. 2 is advisory, and therefore is not binding on the Company, our board of directors or our Compensation Committee, nor will its outcome require the Company, our board of directors or our Compensation Committee to take any action. Moreover, the outcome of the vote will not be construed as overruling any decision by the company or our board of directors.

Furthermore, because this non-binding, advisory resolution primarily relates to the compensation of our named executive officers that has already been paid or contractually committed, there is generally no opportunity for us to revisit these decisions. However, our board of directors, including our Compensation Committee, values the opinions of our shareholders and, to the extent there is any significant vote against our named executive officers' compensation as disclosed in this proxy statement, we will consider our shareholders' concerns and evaluate what actions, if any, may be appropriate to address those concerns.

Shareholders will be asked at the Annual Meeting to approve the following resolution pursuant to this Proposal No. 2:

RESOLVED, that the shareholders of PICO Holdings, Inc. approve, on an advisory basis, the compensation of the Company's named executive officers, disclosed pursuant to Item 402 of Regulation S-K in the Company's definitive proxy statement for the 2011 Annual Meeting of Stockholders

**The Board unanimously recommends a vote "FOR" approval of the foregoing resolution.**

2011 Proxy Statement at 6.

40.    The PICO Board has never suggested that its 2010 executive compensation decision were based on considerations and/or factors other than those set forth in the 2011 Proxy Statement in general and the Compensation Discussion and Analysis section in particular. So by disclosing the rationale for the 2010 pay hikes, the PICO Board lifted shareholders to the PICO Board's level with respect to what the Board deemed as appropriate information necessary to assess whether the 2010 executive compensation was reasonable in light of the circumstances and in the best interest of the Company. As a result, PICO shareholders were able to assess the reasonableness of the 2010 executive compensation in their own business judgment based on exactly the same information that the PICO Board had its disposal.

SHAREHOLDER DERIVATIVE COMPLAINT
- 16 -

41.     Despite the PICO Board's unanimous recommendation, on May 12, 2011, a majority of PICO's voting shareholders rejected PICO's 2010 executive compensation. As defendants subsequently reported in a Form 8-K filed with the SEC on May 19, 2011 the vote was not approved. The proposal received 7,508,152 votes for; 11,782,217 votes against; and 33,943 abstentions.

42.     By voting against the PICO Board's "say-on-pay" resolution, PICO shareholders concluded in their independent business judgment that the 2010 pay hikes approved by the PICO Board were not pay-for-performance and, therefore, not in the best interest of PICO and/or its shareholders. Accordingly, PICO's shareholders voted down the 2010 executive compensation, as excessively large, irrational and not in the best interest of PICO.

43.     Although advisory in nature, the adverse shareholder vote on PICO's 2010 executive compensation is nonetheless evidence that the 2010 pay hikes were irrational and unreasonable under the circumstances, and were not primarily motivated by a desire to protect PICO's interest. In sum, the 2010 executive compensation was not a valid exercise of business judgment by the PICO Board. In light of the adverse shareholder vote, the presumption of business judgment surrounding the PICO Board's 2010 executive compensation decisions has been rebutted, and the burden of proof to demonstrate that the 2010 pay hikes did not violate the PICO Board's own pay-for-performance executive compensation policy and, in fact, were in the best interests of PICO now rests with the PICO Board.

44.     In light of PICO's 2010 performance, PICO Board's actions was not creasonable and or/ done in good faith and in fact constituted a breach of the Board's fiduciary duties of candor, good faith, and loyalty. By this action, plaintiffs seek to hold (i) the PICO Board liable for its breach of fiduciary duty of loyalty, candor and good faith; and (ii) PICO's CEO liable for unjust enrichment.

//

//

SHAREHOLDER DERIVATIVE COMPLAINT
- 17 -

## DAMAGE TO PICO

45.     PICO has been severely injured by the PICO Board's excessive 2010 CEO and top executive compensation.  In 2010, PICO's stock price trailed the stock performances of its industry peers and its annual shareholder return declined significantly in 2010.

46.     When asked by the PICO Board to appraise the 2010 pay hikes as in the best interest of the Company, PICO shareholders rejected the 2010 executive compensation. Instead, PICO shareholders concluded in their own independent business judgment that the 2010 CEO and top executive pay hikes were not in the best interest of PICO and its shareholders, and were only in the interest of the Company's executives.  Notwithstanding this, the PICO Board has not publicly rescinded or amended the 2010 executive compensation to the detriment of the Company.  By contrast, PICO's CEO and top executives have been unjustly enriched by the windfall profits they received in 2010.

47.     By this action, plaintiff seeks to recover damages and other relief for PICO against the PICO Board members for their breach of loyalty, good faith and candor and PICO's CEO and top executives for unjust enrichment.  Absent this action, the Company's rights against its wayward fiduciaries will not be exercised to the further detriment of PICO and its shareholders.

## DERIVATIVE AND DEMAND EXCUSED ALLEGATIONS

48.     Plaintiff incorporates by reference each of the preceding paragraphs as though they were set forth in full herein.

49.     Pursuant to Cal. Corp. Code § 800, plaintiff brings Plaintiff brings this action derivatively in the right and for the benefit of PICO to redress injuries suffered, and to be suffered, by PICO as a direct result of the breaches of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment, as well as the aiding and abetting thereof, by the Individual Defendants.  PICO is named as a nominal defendant solely in

SHAREHOLDER DERIVATIVE COMPLAINT
- 18 -

1   a derivative capacity.  This is not a collusive action to confer jurisdiction in this Court that it

2   would not otherwise have.

3       50.   Plaintiff will adequately and fairly represent the interests of PICO and its

4   shareholders in enforcing and prosecuting its rights.

5       51.   Plaintiff is the owner of PICO common stock and was the owner of PICO

6   common stock at all times relevant to the Individual Defendants' wrongful course of conduct

7   alleged herein.

8       52.   A pre-suit demand upon the PICO Board is a useless and futile action, and

9   therefore, excused for several reasons.  First, a pre-suit demand is excused because the entire

10  PICO Board is interested in the outcome of this litigation.  After approving the unlawful 20201

11  pay hikes for PICO's CEO and top executives, the PICO Board then unanimously

12  recommended that shareholders approve the 2010 compensation.  The PICO Board's decisions

13  to grant the 2010 pay hikes and to unanimously recommend shareholder approval of the 2010

14  executive compensation violated PICO's pay-for-performance policy and breached the PICO'

15  Board's fiduciary duty of loyalty (and candor and good faith).  Consequently, the entire PICO

16  Board faces a substantial likelihood of liability and is interested in the outcome of this action.

17      53.   In addition, the PICO Board is not entitled to business judgment protection for

18  the 2010 pay hikes and/or false and misleading unanimous recommendation for shareholder

19  approval of the 2010 executive compensation.  The adverse shareholder vote on the 2010

20  executive compensation is persuasive evidence that rebutted that presumption.  PICO

21  shareholders concluded in their independent business judgment, that the PICO Board's 2010

22  CEO and top executive pay hikes were not in the best interest of PICO and its shareholders.

23  The PICO Board now bears the burden of demonstrating the independence, good faith and

24  reasonableness of its 2010 executive pay decisions, which the PICO Board cannot do because

25  increasing pay during a period of declining corporate performance violated PICO's pay-for-

26  performance executive compensation policy and, on its faces was disloyal and lacked good

27

28

SHAREHOLDER DERIVATIVE COMPLAINT
- 19 -

1  faith.  Accordingly, a pre-suit demand upon the PICO Board to take action with respect to the

2  2010 CEO and top executive pay hikes is a useless and futile act and therefore excused.

3       54.      Second, a pre-suit demand is excused because the PICO Board unanimously

4  recommended that PICO shareholders approve the excessive 2010 compensation, despite

5  PICO's sagging 2010 stock prices performance and negative 2010 annual shareholder return.

6  On May 13, 2011, PICO shareholders rejected PCIO's 2010 executive compensation.  This was

7  hardly a typical event—indeed over 120 companies held say-on-pay votes this year—the

8  overwhelming majority of which were approved by shareholders.  Nevertheless, the PICO

9  Board has not rescinded or amended the 2010 executive compensation, nor publicly indicated

10  that it has any intention of doing so.   By first unanimously recommending that PICO

11  shareholders approve the excessive 2010 executive compensation, and then reifying their own

12  prior decisions to award the 2010 compensation by not rescinding after a majority negative

13  vote, the PICO Board has demonstrated its hostility towards the relief sough tin the action.

14  Accordingly, a pre-suite demand upon the PICO Board to take action with respect to the 2010

15  CEO and top executive pay hikes is a useless and futile act and therefore excused.

16

17       55.   Third, a pre-suit demand on defendant Hart is excused because his principal

18  professional occupation is his employment as CEO and President of PICO.   Accordingly,

19  Defendant Hart has received and continues to receive substantial monetary compensation and

20  other valuable benefits (including the excessive compensation complained of herein).   Thus,

21  Defendant Hart lacks independence, rendering him incapable of impartially of considering a

22  demand to commence and vigorously prosecute this action.  Moreover, defendant Hart was

23  unjustly enriched by the 2010 CEO and top executive pay hikes, and, as a result, financially

24  benefited from the misconduct challenged herein.   Accordingly, a pre-suit demand upon

25  defendant Hart to take action with respect to the 2010 CEO and top executive pay hikes is a

26  useless and futile act and therefore excused.

27

28

SHAREHOLDER DERIVATIVE COMPLAINT

-20-

56.     Fourth, a pre-suit demand on defendants Deuster, Ruppert, Leslie and Campbell is excused because they are defendants who exert influence over the compensation of the CEO and top executives at PICO by virtue of their positions as members of the Compensation Committee.  The Compensation Committee annually reviews and approves corporate goals and objectives relevant to the compensation for the CEO and other top executives at PICO and evaluates their performance in light of those goals and objectives.  The compensation committee recommended the egregious 2010 pay hikes to the Board of Directors.  Accordingly, a pre-suit demand on defendants Duester, Rupprt, Leslie and Campbell is a useless and futile act and therefore excused.

57.     Fifth, PICO's non-employee directors have received, and continue to receive, substantial compensation in the form of cash and stock option awards.  These defendants are also interested in maintaining their positions on the Board so as to safeguard their substantial compensation and stock options.  The following charts illustrate the substantial compensation that these directors have received, which demonstrates that demand upon such individuals would be futile:

| 20010 NON-EXECUTIVE DIRECTOR COMPENSATION | | | | |
|---|---|---|---|---|
| DIRECTOR | FEES EARNED OR PAID IN CASH | STOCK AWARDS | All Other Compensation | TOTAL |
| Carlos C. Campbell | 81,187 | 24,010 | 13,141 | 118,838 |
| Robert G. Duester | - | - | - | - |
| Ronald Langley | 88,617 | 24,010 | 41,707 | 154,954 |
| Kristina M. Leslie | 85,944 | 24,010 | 0 | 109,934 |
| Richard D. Ruppert | 76,799 | 24,010 | 10,536 | 111,345 |
| Kenneth J. Slepicka | 79,482 | 24,010 | 0 | 95,342 |
| Julie H. Sullivan | 74,883 | 24,010 | 7,770 | 100,663 |

SHAREHOLDER DERIVATIVE COMPLAINT
- 21 -

Exhibit A, Page 30

58.    The non-executive defendant Directors approved the excessive and unwarranted executive compensation to PICO's CEO and other executives. Based on the materiality of the directors fees awards and that these defendants directly benefited from the misconduct that has occurred a pre-suit demand is a useless and futile act and therefore excused.

59.    Sixth, pre-suit demand is excused because in order to bring this suit, all of PICO directors would be forced to sue themselves and persons with whom they have extensive business and personal entanglements, which they will not do, thereby excusing demand. Additionally, the acts complained of constitute violations of the fiduciary duties owed by PICO's officers and directors and these acts are incapable of ratification.

60.    Moreover, despite the Individual Defendants having knowledge of the claims and causes of action raised by plaintiff, the current Board has failed and refused to seek to recover for PICO for any of the wrongdoing alleged by Plaintiff herein.

61.    Plaintiff, moreover, has not made any demand on shareholders of PICO to institute this action since demand would be a futile and useless act for the following reasons:

(a)    PICO is a publicly held company with over 22 million shares outstanding, and hundreds if not thousands of shareholders;

(b)    Making demand on such a number of shareholders would be impossible for plaintiff who has no way of finding out the names, addresses of phone numbers of shareholders; and

(c)    Making demand on all shareholders would force plaintiff to incur huge expenses, assuming all shareholders could be individually identified.

62.    Through their intentional misconduct, Individual Defendants have subjected the Company to potential costs, fines, and judgments associated with the securities class action. Such actions by the Individual Defendants cannot be protected by the business judgment rule. Accordingly, making a pre-suit demand on the Individual Defendants would be futile.

SHAREHOLDER DERIVATIVE COMPLAINT
- 22 -

## COUNT I
## (AGAINST THE INDIVIDUAL DEFENDANTS FOR BREACH OF FIDUCIARY DUTY)

63.   Plaintiff incorporates by reference each of the preceding paragraphs as though they were set forth in full herein.

64.   The Individual Defendants are directors of PICO and as such owe to PICO the highest duty known to the law. Each of these defendants agreed to and did participate in and/or aided and abetted one another in a deliberate course of action designed to divert corporate assets in breach of his/her fiduciary duty owed to PICO.

65.   The Individual Defendants breached their duty of loyalty (and candor and good faith) by approving the 2010 pay hikes for PICO's CEO and top executives, and by concealing that the 2010 executive compensation violated the executive compensation policy, was irrational and unreasonable under the circumstances, and was not a valid exercise off business judgment.

66.   The Individual Defendants misconduct was not due to an honest error of judgment, but rather to their bad faith and was done knowingly, willfully, intentionally, or recklessly for the purpose of favoring the interests of PICO's CEO and top executives at the Company's expense.

67.   By reason of the 2010 pay hikes the Individual Defendants acted irrationally under the circumstances and violated the PICO Board's own policy regarding pay-for-performance executive compensation. Further, the PICO Board unlawfully placed the interests of the Company's CEO and top executives ahead of the interests of PICO and its shareholders, and, in doing so, failed to exercise good faith and have acted disloyally toward PICO and its shareholders. As a result, PICO and its shareholders have been damaged and injured.

## COUNT II
## (AGAINST THE INDIVIDUAL DEFENDANTS FOR GROSS MISMANGEMENT)

68.   Plaintiff incorporates by reference each of the preceding paragraphs as though

SHAREHOLDER DERIVATIVE COMPLAINT
- 23 -

1   they were set forth in full herein.

2   69.   Defendants had a duty to PICO and its shareholders to prudently supervise,

3   manage, and control the operations, business, and internal financial accounting and disclosures

4   of the Company.  Defendants, however, by their actions and by engaging in the wrongdoing

5   alleged herein, abandoned and abdicated their responsibilities and duties with regard to

6   prudently managing the business of PICO in a manner consistent with the duties imposed upon

7   them by law. By committing the misconduct alleged herein, defendants breached their duties of

8   due care, diligence, and candor in the management and administration of PICO's affairs and in

9   the use and preservation of the Company's assets.

10   70.   During the course of the discharge of their duties, defendants were aware of the

11   unreasonable risks and losses associated with their misconduct.   Nevertheless, defendants

12   caused PICO to engage in the scheme described herein which they knew had an unreasonable

13   risk of damage to the Company, thus breaching their duties to the Company.  As a result,

14   defendants grossly mismanaged PICO, thereby causing damage to the Company.

15

16   **COUNT III**

17   **(AGAINST THE INDIVIDUAL DEFENDANTS FOR CONTRIBUTION AND**
**INDEMIFICATION)**

18

19   71.   Plaintiff incorporates by reference each of the preceding paragraphs as though

20   they were set forth in full herein.

21   72.   PICO is alleged to be liable to various persons, entities and/or classes by virtue

22   of the facts alleged herein that give rise to defendants' liability to the Company.

23   73.   PICO's alleged liability on account of the wrongful acts, practices, and related

24   misconduct alleged arises, in whole or in part, from the knowing, reckless, disloyal and/or bad

25   faith acts or omissions of defendants, and the Company is entitled to contribution and

26   indemnification from each defendant in connection with all such claims that have been, are, or

27   may in the future be asserted against PICO, by virtue of the Individual Defendants' misconduct.

28

SHAREHOLDER DERIVATIVE COMPLAINT
- 24 -

## COUNT IV
### (AGAINST THE INDIVIDUAL DEFENDANTS FOR ABUSE OF CONTROL)

74.     Plaintiff incorporates by reference each of the preceding paragraphs as though they were set forth in full herein.

75.     The Individual Defendants' conduct, as alleged herein, constituted an abuse of their control over PICO.

76.     As a direct and proximate result of the Individual Defendants' abuse of control, the Company has suffered, and will continue to suffer, damages for which the Individual Defendants are liable.  Plaintiff, moreover, has no adequate remedy at law.

## COUNT V
### (AGAINST THE INDIVIDUAL DEFENDANTS FOR
### WASTE OF CORPORATE ASSETS)

77.     Plaintiff incorporates by reference each of the preceding paragraphs as though they were set forth in full herein.

78.     The Individual Defendants' conduct, as alleged herein, constituted a waste of the corporate assets of PICO.

79.     As a direct and proximate result of the Individual Defendants' abuse of control, the Company has suffered, and will continue to suffer, damages for which the Individual Defendants are liable.  Plaintiff, moreover, has no adequate remedy at law.

## COUNT VI
### (AGAINST DEFENDANT HART FOR
### FOR UNJUST ENRICHMENT)

80.     Plaintiff incorporates each of the proceeding paragraphs as though they were set forth in full herein.

81.     The 2010 pay hikes for PICO's CEO and top executives violated PICO's pay-for-performance policy, and were unwarranted in light of PICO's dismal 2010 financial

SHAREHOLDER DERIVATIVE COMPLAINT
- 25 -

1 performance. By reason of the foregoing, Defendant Hart has been unjustly enriched. As a
2 result, PICO and its shareholders have been damaged and injured.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A.     Against all of the Individual Defendants and in favor of the Company for the
amount of damages sustained by the Company as a result of the Individual Defendants'
breaches of fiduciary duties;

B.     Declaring that the adverse May 13, 2011 advisory shareholder vote on the PICO
Board's 2010 executive compensation rebutted the business judgment surrounding the PICO
Board's decisions to increase executive compensation in 2010;

C.     Extraordinary equitable and/or injunctive relief as necessary or permitted by law,
equity and the statutory provisions sued hereunder, including disgorgement, attachment,
impoundment, imposition of a constructive trust on or otherwise restricting the
disposition/exercise of improvidently awarded 2010 executive compensation;

D.     Ordering the implementation and administration of internal controls and systems
at PICO designed to prohibit and prevent the payment of excessive compensation to PICO's
CEO and/or top executives;

E.     Awarding to plaintiff the costs and disbursements of the action, including
reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

F.     Granting such other and further relief as the Court deems just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury.

SHAREHOLDER DERIVATIVE COMPLAINT
- 26 -

1

DATED: August 16, 2011

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**GLANCY BINKOW & GOLDBERG LLP**

By:
Louis N. Boyarsky
Lionel Z. Glancy
Michael Goldberg
1801 Avenue of the Stars, Suite 311
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Plaintiff*

SHAREHOLDER DERIVATIVE COMPLAINT
-27-

## VERIFICATION AND AFFIDAVIT OF RONALD DENNIS

RONALD DENNIS deposes and says:

1.    I am a plaintiff in this action.  Subject to the penalties of perjury, I verify that I have reviewed the Complaint (the "Complaint") to be filed in this action, and the facts stated in the Complaint as they concern my acts and deeds are true to my personal knowledge.  I believe that the facts that are pled in the Complaint on information and belief or investigation of counsel are true.

2.    I have not received, been promised or offered and will not accept any form of compensation, directly or indirectly, for prosecuting or serving as a representative party in this action except for (i) such damages or other relief as the Court may award me, (ii) such fees, costs or other payments as the Court expressly approves to be paid to me or my attorneys, or (iii) reimbursement of actual and reasonable out-of-pocket expenditures incurred directly in connection with the prosecution of the action.

_Ronald Dennis_ 8/10/11
RONALD DENNIS

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| — Louis N. Boyarsky (SBN 263379) GLANCY BINKOW & GOLDBERG LLP 1801 Avenue of the Stars, Suite 311 Los Angeles, CA 90067 TELEPHONE NO.: (310) 201-9150 FAX NO.: (310) 201-9160 ATTORNEY FOR *(Name):* Plaintiff Ronald Dennis | FILED CIVIL BUSINESS OFFICE 5 CENTRAL DIVISION 2011 AUG 16 A 11: 31 CLERK-SUPERIOR COURT SAN DIEGO COUNTY, CA |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Diego
STREET ADDRESS: 330 West Broadway
MAILING ADDRESS: 330 West Broadway
CITY AND ZIP CODE: San Diego, 92101
BRANCH NAME: Hall of Justice Courthouse

CASE NAME:
Dennis v. Hart, et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) | ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter ☐ Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | 37-2011-00096377-CU-SL-CTL |
| | | | JUDGE: | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| ☐ Auto (22) | ☐ Breach of contract/warranty (06) | ☐ Antitrust/Trade regulation (03) |
| ☐ Uninsured motorist (46) | ☐ Rule 3.740 collections (09) | ☐ Construction defect (10) |
| Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort | ☐ Other collections (09) | ☐ Mass tort (40) |
| ☐ Asbestos (04) | ☐ Insurance coverage (18) | ☑ Securities litigation (28) |
| ☐ Product liability (24) | ☐ Other contract (37) | ☐ Environmental/Toxic tort (30) |
| ☐ Medical malpractice (45) | Real Property | ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41) |
| ☐ Other PI/PD/WD (23) | ☐ Eminent domain/Inverse condemnation (14) | Enforcement of Judgment |
| Non-PI/PD/WD (Other) Tort | ☐ Wrongful eviction (33) | ☐ Enforcement of judgment (20) |
| ☐ Business tort/unfair business practice (07) | ☐ Other real property (26) | Miscellaneous Civil Complaint |
| ☐ Civil rights (08) | Unlawful Detainer | ☐ RICO (27) |
| ☐ Defamation (13) | ☐ Commercial (31) | ☐ Other complaint *(not specified above)* (42) |
| ☐ Fraud (16) | ☐ Residential (32) | Miscellaneous Civil Petition |
| ☐ Intellectual property (19) | ☐ Drugs (38) | ☐ Partnership and corporate governance (21) |
| ☐ Professional negligence (25) | Judicial Review | ☐ Other petition *(not specified above)* (43) |
| ☐ Other non-PI/PD/WD tort (35) | ☐ Asset forfeiture (05) | |
| Employment | ☐ Petition re: arbitration award (11) | |
| ☐ Wrongful termination (36) | ☐ Writ of mandate (02) | |
| ☐ Other employment (15) | ☐ Other judicial review (39) | |

2. This case ☑ is ☐ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☑ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☑ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☑ Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply)*: a. ☑ monetary b. ☑ nonmonetary; declaratory or injunctive relief c. ☐ punitive
4. Number of causes of action *(specify):* 6– See attachment for Specifications.
5. This case ☑ is ☐ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: August 16, 2011
Louis N. Boyarsky
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use Judicial Council of California CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; Cal. Standards of Judicial Administration, std. 3.10 www.courtinfo.ca.gov |
|---|---|---|

## CAUSES OF ACTIONS

1.    Breach of Fiduciary Duty

2.    Gross Mismanagement

3.    Contribution and Indemnification

4.    Abuse of Control

5.    Waste of Corporate Assets

6.    Unjust Enrichment

1

## CERTIFICATE OF SERVICE

2

*Dennis  v. Hart, et al.*
Case No. _____

3

4    I hereby certify that on September 30, 2011, I electronically transmitted the attached

5    document entitled **NOTICE OF REMOVAL OF ACTION** to the Clerk's Office using the

6    CM/ECF system for filing and mailed a true and correct copy of same on September 30, 2011 as

7    set forth below:

8    Lionel Z. Glancy
     Michael Goldberg
9    Louis N. Boyarsky
     Glancy Binkow Goldberg LLP
10   1801 Avenue of the Stars, Suite 311
     Los Angeles, CA  90067
11   Tel:  310 201-9150
     Fax:  310 201-9160
12   info@glancylaw.com
     lglancy@glancylaw.com
13

14   Attorneys for Plaintiff Ronald Dennis

15

16                                            s/Rorbert W. Brownlie
                                              ROBERT W. BROWNLIE
17

18

19

20

21

22

23

24

25

26

27

28

DLA PIPER LLP (US)
   SAN DIEGO

WEST\224758045.1
000010-018755